DANIEL A. POWELL (Pro Hac Vice pending)
 DPowell@MincLaw.com
MINC, LLC
200 Park Avenue, Suite 200
Orange Village, Ohio 44122
Telephone: (216) 373-7706

TAYLOR C. FOSS (State Bar No. 253486)
 tfoss@wrslawyers.com
MAX N. WELLMAN (State Bar No. 291814)
 mwellman@wrslawyers.com
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
11400 West Olympic Boulevard, 9th Floor
Los Angeles, California 90064-1582
Telephone:   (310) 478-4100
Facsimile:   (310) 479-1422

Attorneys for Plaintiffs JOE FEEHAN,
LUNA AZIZ, and LEGENDAIRY MILK,
LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JOE FEEHAN, LUNA AZIZ, and LEGENDAIRY MILK, LLC,<br><br>            *Plaintiffs*,<br><br>       vs.<br><br>KRYSTAL DUHANEY and MILKY MAMA, LLC,<br><br>            *Defendants*. | Case No.<br><br>**COMPLAINT FOR DEFAMATION, UNFAIR TRADE PRACTICES, AND VIOLATIONS OF LANHAM ACT**<br><br>Trial Date: |

Plaintiffs Joe Feehan, Luna Aziz, and Legendairy Milk, LLC, (collectively "Plaintiffs") file this Complaint against Defendants Krystal Nicole Duhaney and Milky Mama, LLC (collectively "Defendants").

## PARTIES

1.      Plaintiffs Joe Feehan and Luna Aziz are co-owners of Plaintiff Legendairy Milk, LLC ("Legendairy").

2.      Legendairy is a limited liability company with a principal place of business in Travis County, Texas and is engaged in the production and sale of organic herbal supplements providing natural support for healthy breast milk production in lactating mothers. Feehan and Aziz are residents of Travis County, Texas.

3.      Milky Mama, LLC, ("Milky Mama") is a limited liability company with a principal place of business in Riverside, California and is a direct competitor of Legendairy, marketing and selling its products and services to the same customer base.

4.      Krystal Duhaney is a resident of California and the sole owner of Milky Mama. As the sole owner of Milky Mama, there is a unity of interest and ownership between Duhaney and Milky Mama such that the separate personalities of the two do not in reality exist. Adherence to the fiction that Milky Mama and Duhaney are separate entities under the circumstances would promote injustice by allowing Milky Mama to benefit and profit from the bad faith actions of Duhaney pleaded herein without facing any of the consequences for those wrongful actions. Milky Mama should, therefore, be treated as the alter ego of Duhaney and vice versa.

5.      "Denise Schwartz" is a fictitious Internet persona purporting to be a breast-feeding mother residing in Texas which was utilized by Defendants on popular social media platforms, including Facebook.com ("FB") and Instagram.com ("IG"). The Denise Schwartz persona was created and controlled by, and directed for the benefit of, Defendants in both disparaging and defaming the products and

services offered and sold by Plaintiffs and deceptively promoting the products and services offered and sold by Defendants.

6.   "Michelle Berkley" is a fictitious Internet persona purporting to be a breast-feeding mother residing in California which was utilized by Defendants on popular social media platforms, including FB and IG. The Michelle Berkley persona was created and controlled by, and directed for the benefit of, Defendants in both disparaging and defaming the products and services offered and sold by Plaintiffs and deceptively promoting the products and services offered and sold by Defendants.

## **JURISDICTION AND VENUE**

7.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states, and pursuant to 28 U.S.C. § 1331 for Plaintiff's Lanham Act claim.

8.   This Court has specific and general personal jurisdiction over all Defendants because all Defendants, as set forth herein, reside and/or are incorporated in the Central District of California and the acts complained of herein occurred within the Central District of California.

9.   Plaintiffs' claim for defamation and was originally filed in Texas state court against an unknown Jane Doe defendant who operated the Denise Schwartz user accounts, which purported to be a Texas resident. Plaintiffs conducted necessary discovery on FB, IG, and Internet service providers (ISPs) to ultimately unmask Defendants as responsible for the Denise Schwartz accounts and amended their Original Petition to add their Lanham Act claim and name Defendants, who removed the lawsuit to the United States District Court for the Western District of Texas. Defendants filed a motion to dismiss for lack of personal jurisdiction and/or transfer venue to the Central District of California. The district court entered a scheduling order and the parties engaged in extensive discovery in anticipation of a

September 2021 trial date. On August 9, 2021, shortly after continuing the trial date, the district court granted Defendants' motion and dismissed Plaintiffs' claims without prejudice to refiling in another jurisdiction.

10.     Venue is proper in this District because the Defendants reside herein pursuant to 28 U.S.C. § 1391(b)(1).

## **FACTUAL BACKGROUND**

11.     Defendants have published numerous false, defamatory, disparaging, misleading, deceptive, and injurious statements (hereinafter, the "Statements") on the Internet about Plaintiffs, their products, and their services, specifically targeting the Statements towards Facebook and other social media 'groups' populated and frequented by breastfeeding mothers.

12.     Legendairy is an Austin-based and family-owned company that produces organic herbal supplements offering natural support for healthy breast milk production in lactating mothers. Legendairy was founded in 2015 by Aziz and her husband, Feehan. Aziz has been featured in numerous media publications and social media videos as the founder of Legendairy and administers a Facebook group of breastfeeding mothers with over 31,000 members.

13.     Milky Mama, founded in 2015 by Duhaney, is a direct competitor of Legendairy in the breastfeeding supplement industry and intentionally markets itself to breastfeeding mothers on various social media pages.

14.     In addition to being the owner of Milky Mama and generally referred to as "Milky Mama" in the breastfeeding support industry, Duhaney holds herself out as a Registered Nurse (RN) and International Board Certified Lactation Consultant ("IBCLC").

15.     In 2016, while on duty as a nurse and from her workstation at Kaiser Permanente, Duhaney created the Denise Schwartz and Michelle Berkley user accounts on FB and IG.

16.     Plaintiffs first discovered the Denise Schwartz accounts in 2017. Plaintiffs first discovered the Michelle Berkley accounts in 2019, after filing a lawsuit in Texas state court and conducting discovery to unmask the true identity behind the Denise Schwartz accounts.

17.     Through the Denise Schwartz and Michelle Berkley user accounts, until the accounts were deleted in 2019 when Defendants were notified of the prospect of imminent litigation, Defendants conducted a malicious campaign of false, defamatory, misleading, deceptive, and injurious statements on FB, IG, Messenger, and presumably elsewhere on the Internet with the intention of harming Plaintiffs' reputations, tortiously interfering with their business relations, injuring their economic interests, misleading current and prospective consumers, and otherwise causing injury.

18.     Defendants credibly impersonated multiple breastfeeding mothers on Internet message boards and online reviews discussing purported consumer experiences with Legendairy and Milky Mama, specifically including but not limited to those discussions and reviews in which Defendants deceptively sought to divert customers and potential customers away from Legendairy and/or to Milky Mama.

19.     According to user account data, the log-ins to the Denise Schwartz account were through internet connections provided to: (1) Milky Mama's corporate account; (2) Duhaney's cell phone provided by Milky Mama; and (3) Duhaney's home residence where Duhaney performs substantial duties in furtherance of Milky Mama's pursuits.

20.     In order to fraudulently conceal their true identity, Defendants carried out the campaign under fictitious Internet usernames and with account profile pictures of other breastfeeding mothers and their families which were utilized without authorization or any form of consent.

21.     Defendants operated multiple social media accounts, under fictitious Internet usernames, such as the Denise Schwartz and Michelle Berkley accounts, for the purpose of furthering their efforts to maliciously harm the Legendairy brand and deceptively promote the Milky Mama brand.

22.     Both Duhaney, through her actual user accounts, and Defendants' social media manager and Facebook forum administrator, Khadijah Artis-Santiago, routinely and consistently engaged in exchanges with Defendants' fake social media accounts and created posts directed to breastfeeding mothers which gave attention, prominence, and the appearance of credibility to Defendants' fake social media accounts and the posts published therefrom.

23.     Through the Denise Schwartz accounts, Defendants specifically targeted Legendairy's FB page as well as other social media groups of breastfeeding moms, with the intent to damage Plaintiffs' reputations, interfere with their business pursuits and economic interests, and mislead consumers.

24.     On or about September 6, 2017, through the Denise Schwartz FB account, Defendants published a false one-star review on Legendairy's FB page, falsely stating: "My husband bought me the Best Seller bundle before I returned to work and it dried up my milk [emoji][emoji]!!! Once I stopped taking it, my milk started coming back. I emailed and got no help or advice so that was pretty disappointing because I really wanted these to work. I started eating Milky Mama Treats and my supply started increasing so much! I want to donate milk so I may try a different Legendairy Milk product to see if it will work better."

25.     Shortly thereafter, in September and October 2017, Defendants filed trademarks for five products which have substantial crossover in ingredients to existing and trademarked Legendairy products, including the products specifically in Legendairy's Best Seller bundle which Defendants falsely claimed had eliminated a breastfeeding mother's supply of breast milk.

26.    In and around April 2018, as Defendants' products were released for sale to the consuming public, Defendants frequently utilized the Denise Schwartz and Michelle Berkley user accounts to promote Milky Mama, Duhaney, and Defendants' products through a variety of false and deceptive posts in breastfeeding support groups on FB and elsewhere, impersonating Milky Mama customers who were actively breastfeeding mothers suffering from low milk supply.

27.    Defendants gained access to the FB breastfeeding support groups, which are collectively comprised of hundreds of thousands of breastfeeding mothers who often struggle with breastmilk supply for a variety of reasons, by misrepresenting their identity and capacity.

28.    On or about May 9, 2018, in the Facebook group "Exclusively Pumping Mamas- Education & Support Group" (hereinafter "the EPM Group") and through the Denise Schwartz account, Defendants posted a picture of the Milky Mama product Lady Leche and the following question and statement: "Has anyone tried these from Milky Mama? I just got them and am practing [sic] they work or else I'm afraid I won't be able to offer my baby breastmilk anymore [emoji]." In response to the user comments that followed, "Denise Schwartz" stated that the picture posted is Milky Mama's "new herbal supplement" which "are amazing" and "I started leaking today which I haven't done in months" and "so far I'm impressed!" Also, in response to another forum member's comment, "Denise Schwartz" stated: "This is my last-ditch effort. I've tried so many things! Legendairy Milk decreased my supply. I'm hoping the leaking means they're working."

29.    On or about May 11, 2018, in the EMP Group, a group member asked: "Before I buy, I would like real people feedback on the Legendairy Milk products... any feedback is awesome, thank you!" In response to this request for "real people feedback", Defendants falsely stated through the Denise Schwartz account: "I used

1    the Milky Mama Herbal liquids and am seeing pretty good results!" and "This is the

2    only thing that has really worked for me so far."

3        30.    On or about May 17, 2018, in the Facebook group "Fancy Pumpers"

4    (hereinafter "the FP Group"), a group member asked: "Milky mama supplements vs

5    legendairy milk? Is one better than the other?" In response to this inquiry for

6    genuine consumer experiences, Defendants falsely stated through the Denise

7    Schwartz account: "I've tried both and have had better luck with Milky Mama.

8    Legendairy Milk actually decreased my supply [emoji]"and "I could not stomach

9    the [Legendairy product] Lactivist."

10       31.    On or about May 20, 2018, on Milky Mama's Yelp page and through a

11   Yelp user account entitled "Denise S." and with the same profile picture as the

12   Denise Schwartz accounts on FB and IG, Defendants published the following false

13   five-star review of Milky Mama: "So glad I ordered! I was hesitant because I had

14   already tried so many things that hadn't worked. Not only has everything I've tried

15   worked, but they also have an amazing team that helps answer all of my

16   breastfeeding questions. Me and my baby thank you!!"

17       32.    On or about June 8, 2018, in "The Official Milky Mama Lactation

18   Support Group" (hereinafter "the OMM Group"), Defendants falsely stated through

19   the Denise Schwartz account: "So I bought enough Milk Goodness to last til the

20   apocalypse (shhh, don't tell my husband). I seriously need Milky Mama Rehab! Hi,

21   my name is Denise and I'm addicted to Milky Mama Products…" The OMM Group

22   moderator and Milky Mama employee, Khadijah Artis-Santiago, responded: "Join

23   the club. I'm Khadijah, the leader of Milky Mama Anonymous. I announced my

24   addiction months ago. Nice to know I'm not alone. lol."

25       33.    On or about June 12, 2018, in the Facebook group "IGT and Low Milk

26   Supply Support Group" (hereinafter "The IGT Group"), a group member asked "Do

27   any of you use lactivist from legendairy milk? Do you get results from it?" In

28   response to this inquiry for unbiased consumer advice, Defendants falsely stated

through the Denise Schwartz account: "I tried it and it tasted horrible and I didn't see much of a difference. I use Milk Goddess from Milky Mama (it has Torbangun in it too) and saw a decent increase."

34.     On or about June 23, 2018, in the EPM Group and in response to another group member's question about Milky Mama's product Emergency Brownies, Defendants falsely stated the following through the Denise Schwartz account: "I LOVE them! Their products are the only ones that have worked for me. I tried Legendairy Milk, fenugreek, and everything and nothing worked. Legendairy Milk actually made my supply go down [emoji]."

35.     On or about October 20, 2018, in the IGT Group, a group member asked: "For those who have tried Legendairy Milk products, did you see an increase in milk and if so, how much of an increase? I'm thinking about trying Liquid Gold. I have a slow refill rate and low protein levels. Is it worth it?" In response to this inquiry for genuine consumer experience, Defendants falsely stated the following through the Denise Schwartz account: "I used them all including lactivist and nothing helped. A few actually decreased my supply [emoji]. So far, I am seeing good results with Lady Leche and Milk Goddess from Milky Mama." Defendants further replied that "[Milky Mama product] lady Leche helps me with refill rate."

36.     On or about November 28, 2018, in the OMM Group, Defendants posted  an "appreciation post" through the Denise Schwartz account pretending to be a customer who had visited the Milky mama store, tagging "[t]he beautiful Krystal Duhaney" who "spent almost an hour watchting [sic] my guy latch, weighin [sic] baby and telling me how to determine is my supply is low or not… I loved that she wasn't just trying to sell me things but actually wanted to help." Milky Mama employee Khadijah Artis-Santiago responded "She's the best, isn't she?" The post was actually published by Defendants to praise the "Milky Mama" (i.e. Duhaney) and Milky Mama's products. None of the experiences or events described in the post ever actually occurred.

37.   On or about March 31, 2019, Defendants published several false statements in the OMM Group. The false statements included:

a.   "Hi guys! I have a confession to make. I ventured over and tried Legendairy Milk out of curiosity [emoji] My supply plummeted after using them and now I'm scrambling to get it back. I commented on Instagram and they freaking blocked me!!! What can I do? Lady Leche is on the way to me but I'm so worried until it gets here. Help please!! P.S. Never again will I stray from Milky Mama."

b.   "huh?? I tried to contact [Legendairy] and was blocked. That's not fair. My supply was fine, I took [Legendairy's]  pills my supply tanked. I stopped taking them and it's increasing."

c.   "I used the best seller bundle which has milkapalooza, pump princess, and liquid gold. [emoji]."

d.   "I'm sorry. I know every mom is different but [Legendairy's] products just aren't for me."

38.   Defendants published many more posts, comments, and responses through the Denise Schwartz accounts on both FB and IG, including publications that falsely disparage Legendairy and its products and deceptively promote Milky Mama's products and services which Plaintiffs had yet to discover and/or were published in closed groups to which access was restricted. Those accounts and all posts, comments, and responses through those accounts were permanently deleted by Defendants in an attempt to conceal their identity from and liability to Plaintiffs after receiving notice of Plaintiffs' claims, in violation of preservation requirements.

39.   The Denise Schwartz FB was active for three years and was utilized to gain access to and comment in breastfeeding support groups on FB with a collective membership exceeding 330,000 FB users. These FB groups included Fancy Pumpers (15,000 members), Exclusively Pumping Mamas – Education and Support Group (54,100 members), Breast Bottle & Beyond – Support Group (27,400 members), Dairy Queens Breastfeeding Support Closed Group (51,000 members),

IGT and Low Milk Supply Support Group (9,500 members), The Office Milky Mama Lactation Support Group (30,900), Exclusively Pumping Moms (27,000), and Milky Mamas Breastfeeding Support Group (122,000).

40.    The Denise Schwartz IG account was active for three years and accumulated nearly 400 followers.

41.    In addition to the Statements posted through the Denise Schwartz accounts, Defendants also published many of the Statements through the Michelle Berkley accounts and used the Michelle Berkley accounts to interact with and amplify the false statements made through the Denise Schwartz accounts.

42.    On or about September 2, 2018, in the OMM Group and through the Michelle Berkley account, Defendants falsely claimed to have went to Milky Mama's store and met with Duhaney and spoke of Duhaney in effusive terms. Through Duhaney's real FB account, through which she is the Administrator and head moderator of the OMM Group, Defendants responded: "Aww!! Thanks for stopping by mama [emoji] It was a pleasure chatting with you and your little guy. Thank you for the kind words, I'll definitely share them with my team!" In actuality, the meeting never occurred because, in reality, the post was made by Defendants impersonating a breastfeeding mother.

43.    On or about March 18, 2019, through the Michelle Berkley account, Defendants posted in the Facebook group "Milky Mamas Breastfeeding Support Group" (hereinafter "the MMB Group") that she had tried both Milky Mama and Legendairy products and that Legendairy "decreased my supply." Defendants also posted that "Legendairy just about dried me up and I tried all of their products." Defendants also participated in this exchange through the Denise Schwartz account, as evidenced by final response through the Michelle Berkley account ("Denise Schwartz oh no! That's awful") but those statements were subsequently deleted when the accounts were deleted.

44.    On or about March 31, 2019, through the Michelle Berkley account, Defendants responded to a "Denise Schwartz" post in the OMM Group that discussed how her milk supply had purportedly plummeted after using Legendairy's products. The response exclaimed: "Mine Too! I emailed them and didn't get any help unfortunately. So frustrating."

45.    On or about May 28, 2019, through the Michelle Berkley account in the OMM Group, Defendants falsely claimed to have tried all available products and that Milky Mama's products were the only ones that worked. Duhaney responded to this message via Duhaney's personal account.

46.    The OMM Group rules imposed by Defendants on all members who seek to participate include restrictions which prohibit discussion of "other lactation treat/supplements" and "Promotions/Spam/Self-Promotions/Buying/Selling."

47.    Defendants published many more posts, comments, and responses through the Michelle Berkley accounts on FB and IG, including publications that falsely disparage Legendairy and its products and deceptively promote Milky Mama's products and services, but those accounts and the posts, comments, and responses through those accounts were permanently deleted by Defendants after they were put on notice of Plaintiff's claims in an attempt to conceal their identity from and liability to Plaintiffs, in violation of preservation requirements.

48.    Defendants' Statements are false because they do not reflect the honest and genuine experiences or opinions of Plaintiffs' (or Defendants') actual customers.

49.    Plaintiffs have earned and enjoy reputations for providing high-quality products, being honest, being responsive to customer concerns, and maintaining positive relationships with its customers.

50.    The Statements were published by Defendants in an attempt to gain an unfair competitive advantage, ruin Plaintiffs' reputations, and injure Plaintiffs in their industry, trade, and occupations.

51.     Legendairy has thoroughly examined its records and has never had a client with the names "Denise Schwartz" or "Michelle Berkley," nor any variation thereof.

52.     Plaintiffs have identified and contacted the photographers of the pictures utilized by the "Denise Schwartz" and "Michelle Berkley" accounts, learned the true identity of the mothers of those children and confirmed they are not "Denise Schwartz" or "Michelle Berkley", and that the infant pictured who "Denise Schwartz" claims to have been breastfeeding over the previous three years is now in fact nearly 10 years old.

53.     Defendants fraudulently concealed their true identity and capacity in order to create the false appearance of breastfeeding moms who had been injured by Legendairy's products, thereby sabotaging Plaintiffs' reputations and business operations, while at the same time leaving glowing reviews and recommendations for Legendairy's competitor, Milky Mama LLC.

54.     Only after being notified of the prospect of imminent litigation did Defendants cease using the Denise Schwartz and Michelle Berkley accounts.

55.     Defendants have refused to retract their false statements of and concerning Plaintiffs, despite demand.

56.     Defendants have admitted to creating and controlling the Denise Schwartz and Michelle Berkley accounts, but have never notified any of the audiences reached through those accounts of their deception.

57.     Defendants creation and use of the Denise Schwartz and Michelle Berkley accounts were in violation of FB's terms of service and community guidelines as well as the rules and prohibitions imposed by each support group for which Defendants sought admission and actively participated. Defendants even offered an incentive program, including free products or discounts, to their "Brand Ambassadors" and encouraged those individuals to create separate accounts to

perform "Brand Ambassador" duties, which included following Defendants on social media and sharing Defendants' content published to social media.

58.     As a result of the Statements, Plaintiffs have been harmed and continue to be harmed.

## CAUSES OF ACTION

### COUNT 1: DEFAMATION (LIBEL AND LIBEL PER SE)

59.     Plaintiffs repeat and incorporate each and every allegation contained above as though fully set forth herein.

60.     The statements and content of the Statements published by the Defendants are demonstrably false and damaging to Plaintiffs' reputations. The Statements include, but are not limited to, false accusations that Defendants tried Plaintiffs' products, the products were defective and harmful, and that Plaintiffs were not responsive to customer questions or concerns and are rude and hostile towards dissatisfied customers.

61.     Defendants authored and published the Statements without privilege, authorization, or consent.

62.     The Statements are defamatory *per se* as they falsely accuse the Plaintiffs of unprofessional and unethical conduct and tend to harm Plaintiffs in their trade and profession. The Statements were intended to diminish Plaintiffs' reputations in their industry, trade, and profession.

63.     Defendants deliberately directed and communicated the Statements to third parties via the Internet. Upon information and belief, the Statements have been read by Internet users and prospective and current customers throughout California and the World.

64.     Defendants published the Statements with the intent of causing harm to the individual and collective reputations and economic interests of Plaintiffs.

65.     Defendants published the Statements with knowledge of falsity and/or in reckless disregard of truth in that Defendants never genuinely tried Plaintiffs'

1  products and knew Plaintiffs did not engage in unprofessional conduct and that
2  Plaintiffs' products were not defective or harmful.

3      66.     Plaintiffs Feehan and Aziz, by virtue of their positions as co-owners of
4  Legendairy, are so closely identified with Legendairy that the Statements
5  necessarily are of and concerning each Plaintiff and cause injury to their respective
6  and individual reputations and other interests.

7      67.     As a direct and proximate result of the Statements, Plaintiffs have
8  sustained and will continue to sustain, immediate and irreparable harm and injury,
9  including but not limited to significant reputational harm and mental anguish.

10     68.     The Statements were published with malice, hatred, and ill will towards
11 Plaintiffs. The public accusations expose Plaintiffs to hatred, contempt, ridicule, or
12 obloquy because the Statements, as a whole, falsely allege that Plaintiffs are rude
13 and/or unresponsive to complaints submitted about their products by breastfeeding
14 mothers and that their products decrease milk supply. The Statements were made
15 with the intent of diverting business away from Plaintiffs and damaging their
16 reputations in their trade and industry. Plaintiffs are, therefore, entitled to punitive
17 damages against Defendants in an amount according to proof, in order to dissuade
18 Defendants from pursuing a similar course of conduct and to discourage other
19 people from engaging in similar conduct in the future.

## COUNT II: VIOLATIONS OF LANHAM ACT
## (15 U.S.C. §§ 1051 ET SEQ.)

22     69.     Plaintiffs repeat and reallege each and every allegation contained above
23 and below as though fully set forth herein.

24     70.     Defendants and Plaintiffs are direct competitors in their industry and
25 both are engaged in interstate commerce.

26     71.     The Statements have entered interstate commerce, are designed and
27 intended to influence purchasing decisions by consumers, and have been sufficiently

28

disseminated to the purchasing public via the Internet to meaningfully influence their purchasing decisions.

72.    The Statements have a tendency to deceive a substantial section of Defendants' intended audience, and such deception is material.

73.    The Statements amount to false or misleading descriptions and/or representations in connection with the goods and services offered by Plaintiffs and Defendants.

74.    The Statements are likely to and have in fact caused confusion, mistake, and/or deception as to the affiliation, connection, or association of the "Denise Schwartz" and "Michelle Berkley" personas with Plaintiffs.

75.    The Statements are likely to and have in fact caused confusion, mistake, and/or deception as to the origin of the approval of Defendants' goods by the "Denise Schwartz" and "Michelle Berkley" personas and also qualify as a means of unfair competition.

76.    The Statements, which amount to de facto commercial advertising or promotion of Milky Mama products, include material misrepresentations as to the nature, characteristics, and quality of Plaintiffs' goods, services, and commercial activities.

77.    Plaintiffs have suffered irreparable injury as a result of the Statements.

78.    Because the Statements mention Legendairy by name, irreparable injury is properly presumed.

79.    Defendants' actions complained of herein were willful and taken in bad faith.

80.    The bad faith actions of Defendants render this an exceptional case.

81.    Plaintiffs seek injunctive relief, monetary damages, treble damages under 15 U.S.C. § 1117(a), Defendants' profits, costs of the action, and all other relief allowed under the Lanham Act, including attorneys' fees.

## COUNT III: TRADE LIBEL / INJURIOUS FALSEHOOD / PRODUCT DISPARAGEMENT

82.     Plaintiffs repeat and reallege each and every allegation contained above and below as though fully set forth herein.

83.     The Statements unjustly and unlawfully disparage the products and services offered by Plaintiffs through known falsehoods that have resulted in injury to Plaintiffs and which were intended to cause such injury. The Statements were disparaging because they are false and misleading and were made to influence potential purchasers to refrain from buying Plaintiffs' products.

84.     Defendants knew that the Statements were false and/or published the Statements in reckless disregard of their falsity.

85.     In publishing the Statements, Defendants intended for the Statements to result in harm to Plaintiffs' pecuniary interests.

86.     Plaintiffs have incurred significant economic losses including lost profits, online remediation, and mitigation related costs and out-of-pocket-expenses.

87.     Because Defendants acted willfully, maliciously, wantonly, and unlawfully, Plaintiffs seek exemplary and/or punitive damages in addition to actual damages in order to dissuade Defendants from pursuing a similar course of conduct, and to discourage other people from engaging in similar conduct, in the future.

## COUNT IV: UNFAIR BUSINESS PRACTICES
### (Bus. & Prof. Code §§ 17200 et seq.)

88.     Plaintiffs repeat and reallege each and every allegation contained above and below as though fully set forth herein.

89.     Defendants' publication of the Statements constitutes an unlawful, unfair, deceptive, misleading, and/or fraudulent business practice.

90.     Publication of the Statements is unfair in that it threatens an incipient violation of federal and/or state antitrust laws, including but not limited to the ones listed above, and/or violates the underlying policy of antitrust laws by perpetuating

false information to discourage customers from engaging with Plaintiffs' business and products, and the Statements significantly threaten and/or harm competition.

91.     Publication of the Statements was fraudulent in that the public was likely to be deceived by the Statements by posing as a customer and mothers currently having issues with breastfeeding.

92.     In publishing the Statements, Defendants intended for the Statements to result in significant harm to competition and to Plaintiff's pecuniary interests.

93.     Plaintiffs have been injured in fact by Defendants' Statements and have incurred significant economic losses including lost profits, online remediation, and mitigation related costs and out-of-pocket-expenses. Plaintiffs have ownership interests in any profits wrongfully obtained by Defendants as a result of the Statements, the full amount of which will be proven at trial.

94.     Plaintiffs additionally seek injunctive relief to prohibit the publication of similar Statements by Defendants in the future.

95.     Because Defendants acted willfully, maliciously, wantonly, and unlawfully, Plaintiffs seek exemplary and/or punitive damages in addition to actual damages in order to dissuade Defendants from pursuing a similar course of conduct, and to discourage other people from engaging in similar conduct, in the future.

## COUNT V: FALSE ADVERTISING
### (Bus. & Prof. Code §§ 17500 et seq.)

96.     Plaintiffs repeat and reallege each and every allegation contained above and below as though fully set forth herein.

97.     Defendants knowingly disseminated the Statements to the public in California and the World via the Internet.

98.     Defendants' Statements are untrue and/or misleading in that Defendants represented themselves as actual customers of PlaintiffS, rather than market competitors, and falsely asserted they had utilized Plaintiffs' products and professional services with adverse health effects resulting from such use.

99.    Defendants made the Statements with the intent to induce the public and potential customers to enter into certain obligations with Defendants and refrain from entering into obligations with the Plaintiffs, i.e. to purchase Defendants' products and services rather than Plaintiffs' products and services.

100.    The Statements were of such a nature that were likely to deceive reasonable members of the public by credibly posing as customers and mothers experiencing issues with breastfeeding.

101.    Defendants made the Statements with the intent to deceive members of the public and cause significant harm to Plaintiffs' pecuniary interests.

102.    Upon information and belief, members of the public believed and relied upon Defendants' representations in the Statements, specifically that Plaintiffs' products decreased Defendants' milk production, that Plaintiffs were unprofessional and rude to customers, that Defendants' own products immediately rectified any decreases or lack of supply, and Defendants provide unparalleled customer service.

103.    Plaintiffs have been injured in fact by Defendants' Statements and have incurred significant economic losses including lost profits, online remediation, and mitigation related costs and out-of-pocket-expenses. Plaintiffs have ownership interests in any profits wrongfully obtained by Defendants as a result of the Statements, the full amount of which will be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants, and award the following relief to Plaintiffs and against Defendants:

1.    Actual and/or compensatory damages, statutory damages, and exemplary or punitive damages where available, with the exact amount to be proven at trial;

2.    Profits earned by Defendants;

3. Restitution of lost profits resulting from Defendants' unfair trade practices;

4. A permanent injunction halting the continued dissemination of the publications and libelous statements of and concerning Plaintiffs, and further ordering Defendants to remove the Statements or any same or similar statements published by Defendants from the Internet and request Google, Bing, Yahoo!, and other search engine providers to remove the Statements from their respective search results.

5. Reasonable attorneys' fees;

6. Costs of this action;

7. Pre- and post-litigation interest at the maximum rate provided by law; and

8. For any and all other relief, at law or in equity, both general and special, to which the Court determines Plaintiffs are justly entitled.

DATED: September 3, 2021   WOLF, RIFKIN, SHAPIRO,
           SCHULMAN & RABKIN, LLP


           By:  */s/ Max Wellman*
            MAX N. WELLMAN
           Attorneys for Plaintiffs JOE FEEHAN, LUNA
           AZIZ, and LEGENDAIRY MILK, LLC

## **REQUEST FOR JURY TRIAL**

Plaintiff hereby demands a trial of this action by jury of all issues that may be tried to the jury.

Respectfully Submitted,

DATED: September 3, 2021
WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP


By:  */s/ Max Wellman*

MAX N. WELLMAN
Attorneys for Plaintiffs JOE FEEHAN, LUNA AZIZ, and LEGENDAIRY MILK, LLC